UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 19-CR-4286-GPC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| IVORY WRIGHT, | |
| Defendant. | |

## I. INTRODUCTION

On September 8, 2021, Defendant Ivory Wright ("Wright") filed a Motion for Compassionate Release ("Motion") seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1). ECF No. 57.[1] On September 24, 2021, the Government opposed. ECF No. 52. Wright replied on October 7, 2021. ECF No. 53. For the reasons that follow, Wright's Motion is **GRANTED.**

---

[1] Due to an error in the filing, defense counsel withdrew the originally filed Motion, ECF No. 50, and refiled an amended version, ECF No. 57. The amended Motion is nunc pro tunc to September 8, 2021.

## II. BACKGROUND

Wright was convicted of one count of violation of Title 21 §§ 952 and 960, importation of methamphetamine. ECF No. 47. At sentencing, defense counsel recommended a sentence of 46 months, a four-level departure below the guidelines range. ECF No. 39. The Government recommended between 84 and 105 months. ECF No. 40. In an objection to his Pre-Sentence Report, Wright argued that he qualified for safety valve under the First Step Act, 18 USC § 3553(f), because § 3553(f) was conjunctive, meaning that Wright was safety-valve eligible unless he had all three types of convictions: a three-point conviction, a two-point crime of violence, and four criminal history points (excluding one-point convictions). ECF No. 37 at 1. The Court rejected this argument and overruled Wright's objection to the Pre-Sentence Report. ECF No. 49 at 21. The Court ultimately sentenced Wright to the mandatory minimum sentence of 60 months, plus a four-year term of supervised release, and recommended the RDAP program. *Id.* at 28-29. Wright is currently incarcerated at FCI Oxford in Wisconsin and has served approximately 29 months in custody. ECF No. 52 at 3. His scheduled release date is January 11, 2024. *Id.*

## III. DISCUSSION

Wright now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

> imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, there are two questions before the Court: first, whether Wright has satisfied the administrative exhaustion requirement, and second, whether Wright has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies or 30 days have elapsed from the receipt of such a request by the warden, whichever is earlier.

On June 25, 2021, Wright, via defense counsel, sent a written email request for compassionate release to the Warden at FCI Oxford. ECF No. 57-1 at 2, Ex. A. The Government does not raise an argument about a failure to exhaust administrative request. Since more than 30 days have passed since Wright's written request to the Warden, the exhaustion requirement has been met and the Court accordingly proceeds to a consideration of the merits.

### B. Extraordinary and Compelling Circumstances

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. Section 1B1.13 explains that a sentence reduction under 18 U.S.C. 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

>(1) (A) Extraordinary and compelling reasons warrant the reduction;
>. . .
>(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed by a defendant.  *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Since there is now no applicable policy statement governing compassionate release motions filed by defendants, district courts are empowered to consider any extraordinary and compelling reason for release that defendants may raise, even if not enumerated by the Sentencing Commission's statements. *Id.* at 801. The Court therefore may consider Section 1B1.13 in its broad exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons. *Id.*

Wright argues that there are three extraordinary and compelling circumstances justifying a sentence reduction: (1) the unusual length of his sentence owing to the disparity between his sentence and the sentence he would have received today under *United States v. Lopez*, (2) the need for Wright to care for his seriously ill stepfather; and (3) the unusually harsh conditions of confinement Wright has endured because of COVID-19. While in Wright's case none of these circumstances might fully justify a

sentence reduction when considered individually, the Court finds that the sentencing disparity, and the need for Wright to care for his seriously ill stepfather, combine to merit a sentence reduction in this case.

### a. COVID-19 Conditions

As an initial matter, the Court finds that custodial conditions during the current COVID-19 pandemic, taken alone, are not sufficient to justify Wright's sentence reduction. While the Court is sympathetic to the heightened stressors and hardships of incarceration during the pandemic, changed conditions adopted by the Bureau of Prisons ("BOP") in response to the pandemic are unlikely to constitute extraordinary and compelling reasons for compassionate relief when not taken in combination with other individual circumstances, because such conditions apply to most, if not all, inmates under the BOP's purview.[2] In addition, the Court sentenced Wright in October 2020, when the pandemic was well underway, and was aware of potential COVID hardships at the time of sentencing.

### b. Sentencing Disparity Post-*Lopez*

The Court now turns to Wright's sentencing disparity argument. In *Lopez*, the Ninth Circuit adopted the same conjunctive reading of the First Step Act put forward by Wright at his sentencing. *United States v. Lopez*, 998 F.3d 431, 433 (9th Cir. 2021) (holding that § 3553(f)(1) is "unambiguously conjunctive"). If Wright had been sentenced after *Lopez* was decided just eight months later, Wright would have been eligible for safety valve and the Court could have departed below the mandatory

---

[2] At the same time, the Court is not persuaded that the COVID-responsive measures implemented by the BOP are a factor that weigh toward denying Wright's motion. As Wright points out, these measures themselves are partly what contribute to the harshness of the sentence served. *See* ECF No. 57 at 5 (describing quarantine measures leading to isolation and anxiety).

minimum sentence. A disparity therefore exists between the sentence Wright received, and the sentence he might have received post-*Lopez.*

Courts in this district have found extraordinary and compelling reasons meriting sentence reduction because of the disparity between the sentence a defendant received and the sentence that defendant might have received with safety valve eligibility. *See United States v. Rosas*, No. 17-CR-3431-MMA-4, 2020 WL 7226438, at *3 (S.D. Cal. Dec. 8, 2020) (finding that the sentencing disparity created by the expansion of eligibility for safety valve relief justified a sentence reduction for defendant, even where defendant had been sentenced two years prior to the passage of the First Step Act). *United States v. Gloria Blancas de Hernandez* is particularly persuasive and on point. In *Blancas de Hernandez,* as here, the defendant was subject to a five-year mandatory minimum for a drug-related offense, and application of the safety valve would have made the defendant eligible for a shorter custodial term. *United States v. Gloria Blancas de Hernandez*, No. 17-CR-2110-MMA, 2021 WL 2290778, at *3 (S.D. Cal. June 4, 2021). The court found that defendant's case "typifie[d] the circumstances under which a court should consider the imposition of a statutorily required minimum custodial term to be an extraordinary and compelling circumstance" and accordingly granted a sentence reduction. *Id*. Similarly, this Court is persuaded that Wright would have received safety valve and therefore a shorter custodial sentence had *Lopez* been decided before his sentencing, thus resulting in a sentencing disparity that can be considered under § 3582.

This Court is not prepared to find that *Lopez* should result in a retroactive sentence reduction for every potentially eligible defendant regardless of circumstance. *Cf. United States v. Jones,* 482 F.Supp.3d 969, 979 (N.D. Cal. 2020) (finding that, as it relates to another sentencing provision considered in the § 3582 context, the mere fact that Congress did not make a provision categorically retroactive does not prohibit a court from using § 3582 to make an individualized consideration of sentence reduction on a

case-by-case basis). However, in this instance Wright has put forward a persuasive argument under *Lopez* that, when combined with other circumstances that augur in his favor, ultimately constitute the type of extraordinary and compelling circumstances that merit a sentence reduction.

### c.     Defendant's Need to Care for Family

Wright also asserts his stepfather's severe kidney disease and a pressing need for a caretaker as a further extraordinary and compelling circumstance warranting sentence reduction. ECF No. 57 at 6. Wright's stepfather, Mr. Washington, has one remaining kidney, which is failing, and is required to undergo dialysis three days a week. ECF No. 57-1 at 8, Ex. B. He cannot drive himself to his appointments, is frequently exhausted, and must rely on a caregiver. *Id*. Mr. Washington was further weakened by a bout with COVID-19 in January 2020. *Id.* at 9. Currently, Wright's brother Dewaun provides some care, but the family states that this arrangement will not be tenable for much longer given the other demands on Dewaun's life. *Id.* Wright argues that, if released, he would be the sole reasonably available caregiver for his stepfather, and that he intends to become his stepfather's full-time caretaker when released from custody. *Id.* at 13.

The Court does not find that the need to care for a severely ill parent would itself necessarily constitute an extraordinary and compelling reason meriting sentence reduction. At the same time, the Court recognizes that despite some disagreement among lower courts, other courts around the country have found the need to care for a parent to be sufficient in some circumstances. *See, e.g., United States v. Ledezma-Rodriguez*, No. 3:00-CR-0071, 2020 WL 3971517, at *7 (S.D. Iowa July 14, 2020) (noting disagreement among courts and finding that parental caretaking can be a sufficient factor in some circumstances); *United States v. Bucci*, 409 F.Supp.3d 1, 2 (D. Mass. 2019) (holding that courts could consider factors not enumerated by the Sentencing Commission and that being a sole caregiver for a parent was an extraordinary and compelling reason

warranting release); *United States v. Hernandez,* No. 16-20091-CR-WILLIAMS, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (finding extraordinary and compelling reasons exist because defendant was needed to care for his elderly mother and her health conditions); *but see United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (need to care for elderly mother in hospice was not an extraordinary and compelling reason for compassionate release).

In Wright's case, it is clear that his stepfather suffers from severe illness and is in need of a caretaker. Wright has stated that, if released, he would take on a significant and necessary portion of the burden of care, while also benefiting from the stability attendant from living with his stepfather. Wright also states that the current caretaker, Dewaun, is in an untenable situation and will no longer be able to provide long-term care, such that Wright will become the sole available primary caretaker for his stepfather. As such, the Court finds that, in combination with the sentencing disparity noted above, the need for Wright to care for his severely ill parent constitutes an extraordinary and compelling reason justifying his sentence reduction. These two factors together weigh in favor of compassionate release.

### C. CONSISTENCY WITH OTHER SECTION 3553 FACTORS

A court entertaining a § 3582 motion should also consider whether sentence reduction would be commensurate with other sentencing factors set forth in 18 U.S.C. § 3553, including dangerousness to the public. *See United States v. Fortanel*, No. 18-cr-5383-GPC, 2021 WL 1579082, at *3 (S.D. Cal. Apr. 22, 2021). Defendant's offense, while serious, was nonviolent. ECF No. 26 at 3 (Presentence Report describing offense). Furthermore, Wright points to his efforts during his incarceration to reform, his lack of disciplinary action during his incarceration, and this Court's acknowledgment of his remorse and the tragic circumstances of his wife's passing which exacerbated his vulnerability to addiction as factors that weigh in his favor. ECF No. 57 at 22-23.

1 Therefore, the Court finds that in this case, the § 3553 factors do not weigh against
2 Wright's request.

## IV.   CONCLUSION

The Court accordingly grants Wright's motion for compassionate release based on a unique combination of factors: (1) the sentencing disparity he experienced in light of *Lopez*'s ruling several months after his sentencing, in which the Ninth Circuit ultimately adopted the same argument put forth by Wright at his sentencing and (2) the debilitating medical condition suffered by Wright's stepfather, for whom Wright would become the sole and primary caretaker. As the Court noted above, these factors taken alone might not be sufficient to warrant compassionate release in every case, as § 3582 motions require fact-intensive and case-specific inquiries. However, in Wright's case, the Court finds that compassionate release is warranted and therefore GRANTS Motion. Wright's sentence is MODIFIED and REDUCED to time served pursuant to 18 U.S.C. § 3582(c), effective immediately, to be followed by a four-year term of supervised release under the conditions set forth in the original judgment (ECF No. 48), plus the following added special condition:

(1) Wright shall be placed in home detention for a period of twelve months, without electronic monitoring, where he will be required to reside with his stepfather, Booker T. Washington III. Wright will be restricted to his residence at all times except for medical necessities, to provide necessary medical care for his stepfather, and to make court appearances or other activities specifically pre-approved by the Court.

Wright is HEREBY ORDERED to report by telephone to the U.S. Probation Office in San Diego, California within 24 hours of his release from BOP custody.

The Government shall serve copies of this order on the Warden of FCI Oxford immediately. The Warden shall immediately release Defendant Ivory Wright from

custody. In the event that the Warden or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated:  March 7, 2022

Hon. Gonzalo P. Curiel
United States District Judge